Good morning. My name is Hope Freeman. I represent Wayne Deputy, the appellant in this case, and seated beside me is Mr. Michael, who is the attorney of record in this case, but I will be arguing. I'm going to limit my argument to two issues contained in the appellate's brief. The first issue is whether the district court abused its discretion in admitting the polygraph evidence without limitation. The second issue is whether the district court abused his discretion by excluding the two expert witnesses for the defense. Counsel? The first issue then, yes. Just so the record is clear, there was really not any polygraph evidence admitted, right? There were no polygraph results admitted. Is that correct? That's correct. Because your client didn't actually take a polygraph, right? No, that's entirely correct. Well, I think the rationale, obviously, of the district court, and this is what you need to, you know, rebut or prevail on this, is that cross-examination of the expert into the, there was cross-examination as to the statement that your client ultimately made, that the district court said, hey, you swung the barn door wide open because you made the witness, the witness couldn't truthfully answer your questions, and you knew that, and so it made the witness look bad, and it gave a misimpression to the jurors about what exactly had happened here, because the witness had been instructed, don't say anything about a polygraph or whatever, but why didn't the cross-examination just cause the whole problem, and then in order for the jury to have an accurate understanding of why your client, why it took so long, why your client said what he said, and what were the true circumstances, you know, why isn't this just a self-inflicted wound? I recognize that, and there have been cases, obviously, that indicate if the defendant challenges the confession because of voluntariness or because of coercion, and it's brought up by the, by our client, then there is a barn door opening, and it did come up to that effect because trial counsel did go there, but it's our contention that without any limitation on that testimony, and without a specific instruction to the jury of how to use that testimony, that the prejudicial effect was clearly, it clearly overborne the, Did you ask for an instruction? Did you ask for one? I do not believe so. So this is a plain error analysis, I gather. Yes, yes, and I think the timing of it when it came up after the prosecution had ended its proofs, or the government had ended its proofs in allowing the polygraph operator to testify in the midst of the defense case regarding the voluntariness of the statement, in addition to what that polygraph operator actually testified to, it clearly prejudiced the defense. Put it in context. Well, but prejudice is different than, you know, I mean, prejudice, it was damning, yes, but it was true, and you can't use something as a sword and a shield, and it would just seem to me that, you know, the argument is that when you put the witness's credibility in question, and the witness can't truthfully answer the question because of how you're asking it, then you're using it as a shield, and it seems to me that's what happened here. Yeah, it's damaging, but it's not untrue. You know, if the court hadn't allowed it, then the jury would have been in a situation where they would have to evaluate circumstances within a false light, and that would seem to be worse. I understand that, but not limiting the polygraph operator's testimony to the issue of what took place through the one-and-a-half hours, okay, what were the circumstances of the defendant finally giving a statement? It wasn't limited to that, because what the polygraph operator did here is continue in the same vein he had previously, and he indicated that he believed that the confession was truthful, and he said he was there to get a statement and determine whether the confession was truthful. He indicated, I believe it was the truth today. He indicated that we decided not to take the examination. He was continuing to assert his belief that the confession was truthful, and it was the same thing that he testified to on direct examination, or the first time he testified. That wasn't the result of a polygraph, though, was it? His conclusion that it was truthful. No, it's not. That's just his opinion. That's correct. Well, he just gave expressive opinion again on that subject, but it didn't have anything to do with the polygraph. Yes, he did. Well, in his testimony, he always referred to he would be able to determine the results, or he would be able to determine whether Mr. Deputy was telling the truth or not. It wasn't whether the polygraph could, and so I think that could have misled the jury when he said, I determined that this confession was truthful. He made no distinction whether it was the polygraph determining it or whether it was he determining it, and the jury was likely left with the impression that, hey, he's recalled this case just to reaffirm his belief that Mr. Deputy gave a truthful confession. Well, how was the case argued? Did anyone argue in the argument? I don't see anywhere cited where someone in the argument said, well, that there was a polygraph that said that he was telling the truth. How was the case argued? I don't have the copies of either the opening or closing arguments. Well, but if in the closing argument, someone had said that there was the existence of a polygraph, then you might have a good argument here, but I don't think that wasn't the case here. And how hard would it have been to just say, Your Honor, in light of the fact that the courts entered this in, would you please instruct the jury that the evidence, that the fact that a polygraph was going to be given is only offered for the limited purpose of you determining whether he voluntarily made this statement? I agree. I think trial counsel probably should have done that. Okay. Thank you. Let me move on to the second argument, and that would be the one regarding whether the exclusion of the defense experts was an abuse of discretion. Here, there was a Daubert hearing. It was a short Daubert hearing at the end of the proofs from the government. Dr. Offshe testified. He testified to his methods. He testified to the structure of the interrogation, the methods used. And the court basically accepted his qualifications to testify regarding false confessions, but the court indicated it would exclude that testimony because he didn't feel that it fit the requirement under Daubert. It fit to be probative of a relevant issue and that it wouldn't help the jury. We cited in our brief the Hall case out of the Seventh Circuit in which Offshe was precluded from testifying, and the Seventh Circuit reversed that decision and indicated that Mr. Offshe or Dr. Offshe should have been able to testify because he had testimony that exceeded the normal juror's view or knowledge and that he had knowledge that could share to basically explode a common myth that people that confess and incriminate themselves who haven't done it. Yes. Of course that case is not binding on us. So why should we find that case to be persuasive? Well, U.S. v. Finley at 301 F. 3rd 1000, a 2002 case out of the circuit, held the same. In that case, however, it was atypical beliefs that the expert would be testifying to. And the Shea case cited in the defense argument for the standard to look at, and that's whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having specialized understanding of the subject matter involved. Here, Dr. Offshe had. Isn't that precisely what a trial court does, is determine whether or not the testimony would be useful to the jury? And how in this particular case did the district court abuse that discretion? Well, I don't think it went far enough. I don't think the district court went far enough in its examination under Daubert. He basically said since there was no coercion on the record that he wasn't going to admit this testimony. Didn't you also have the additional problem of a discovery disclosure that the court said something, if Dr. Offshe was to testify, part of what the offer of proof was, was not included in, it was not disclosed in the expert report that had been disclosed 21 days previously. So you were offering him to testify to certain things that the other side was not on notice of and was in violation of discovery requirements, right? Don't you have that problem, too? Yes, we did. We did have that problem, and it was a Rule 16 violation the court found, and the basis for the opinion were disclosed. That problem, though, unless what we're arguing here is the court imposed too harsh a remedy, and that's cited U.S. v. Finley at 301 F. 3rd, 1000. Exclusion is the appropriate remedy for a discovery rule violation only where the omission was willful and motivated by a desire to obtain a tactical advantage. Here, what happened was there was a statement given in late June to Dr. Offshe by Mr. Deputy. He sent the transcript of that statement or the tape to the wrong address for the defense, and so by the time the defense attorney received that statement, it couldn't provide it to the court in time. And so there was technically a discovery violation, but we believe the court abused its discretion in entirely taking the whole Dr. Offshe's testimony out. Wasn't his opinion based entirely upon his interview of deputy? Isn't that what he based his opinion on? No, he also testified that he reviewed the suppression hearing transcript, that he'd gone over it with the defense attorney, and in that suppression hearing transcript both deputies testified. You say he did review the suppression hearing? Yes, he testified to that at the Galbert hearing. I had the impression he didn't do that, but perhaps I'm incorrect. Counsel, did you want to save any time for rebuttal? No, I'll just continue. All right. Thank you. It's our position on the discovery issue that it was too severe a sanction, that this wasn't a willful and motivated... Counsel, it seems as if the trial judge used a combination of the fact that he perceived this testimony to be generalized testimony and the discovery issue. So what's your response to the combination of reasons used by the judge? Well, his other... First of all, I think it could turn on either. But the reasons he gave for exclusion were basically he found there was no coercion in this case, because the Ninth Circuit had already determined that offers of leniency versus offers of immunity, offers of leniency weren't enough to make a confession involuntary. So he said then that makes Dr. Offshe's testimony irrelevant to this proceeding. When we know that under Crane versus Kentucky, a defendant can argue coercion and involuntariness to a jury and present evidence to that effect. So for that reason... The defendant himself could have testified to that, but that doesn't mandate that expert testimony be allowed. I understand. But in the posture here, what you have is a polygraph operator saying that this confession was voluntary, that this confession was truthful, and with his credentials, and then you have the defendant coming in and trying to explain, hey, there were threats made, there were offers of immunity made, and I don't... By tying the defendant's hands and presenting his case, I think under this posture, it became an error on the trial court's part in excluding this testimony. Let me move on to the final. That would be Julia Gates. The court also excluded her testimony. He, again, didn't challenge really the scientific methodology of her testimony, but said in his belief that listening to the testimony, these tests were never designed or intended for the purpose of which they are attempting to use it in this case. That is, an attempt to avoid criminal responsibility. But didn't she admit to that, that she had never testified as an expert in this context? That's correct, but I don't think that's the test, because I cited the Williams case out of the District of Hawaii, and again, the U.S. v. Finley case, where the court and the government faulted the reliability of the defense expert's methodology to the extent that the expert's opinion depended entirely on the doctor's subjective view of the defendant's truthfulness, and both those courts faulted the trial court for using that in its determination of reliability and methodology of the expert's testimony. In fact, in Finley, the court indicated that by excluding their testimony, excuse me, indicated that the court, the law does not require every expert who testifies to be an expert in detecting deceit. Analogously, we refuse to require that mental health experts prove themselves infallible lie detectors before accepting their psychological diagnosis. What they're saying is, it shouldn't be part of their methodology, I think, that they have to accept the person's either testing abilities or statement before they can render a conclusion. All right. Counsel, you've exceeded your time. Thank you. Thank you. Good morning. Laurie Sook for the United States. I was trial counsel as well as counsel on appeal. There are two standards of review with respect to the admission of the polygraph information as an operative fact. We argued abuse of discretion in our brief because the limiting instruction issue was raised in the reply brief. That would be reviewed for plain error because there was no request for a limiting instruction. In this case, it's important to look at the transcript of Special Agent Smidall's testimony. It was very limited with respect to the government's questioning of him. Initially, of course, no mention was made of polygraph. And then on the recall in his direct testimony at the second volume transcript, pages 161 through 165, you'll see that the only information elicited was the fact that there was a polygraph in play. None was given. And that was an operative fact for the jury to consider. It was on cross-examination where the door was initially opened, and then the defendant's biggest complaint here about the opinions given by the polygraph examiner about the truthfulness of the statement, they were all elicited on cross-examination. These were questions. He was attacked about his methods, about what he had done during the interview, and quite frankly asked many times about his opinion. And he gave it. There certainly was no motions to strike or anything made by the defense. They just continued to ask those questions. Well, if you had not been allowed on redirect to establish what, in fact, was going on, that this was a pre-polygraph interview where, in fact, he allegedly, the defendant allegedly confessed, how would the jury have been misled if, you know, if you had not been allowed to get that in? Looking at the transcript, Judge Callahan, it's not a clear picture, I have to be honest. And the trial judge's comments will show you that. It's bad enough just reading it from the cold transcript, but the witness appeared evasive. The witness could not answer the questions. This was concerning to the government. It was corroborated by the comments of the district court judge. So the jury would have been left with the opinion that this witness was somehow holding back, lying, had done something else because that's how he appeared on the stand. What was the witness told that he couldn't say on direct? Anything. He could not use the word polygraph. He couldn't mention that he was a polygraph examiner, that this defendant was there to take a polygraph exam. He could not talk to them about the 30 to 45 minutes of that interview that he used to explain the polygraph process. He was allowed- Was the defense on cross-attacking that an hour and a half had gone by and that somehow that was a problem for the voluntariness? Yes. In fact, for a period of time it went minute by minute as to how long did the biographical information take you to elicit. How long did you talk about this and this and this? It did get to that point during that cross-examination. That cross-examination went from pages 65 to 85 of the first volume of the transcript, 20 pages of going through not only each minute of the interview, but then talking about the techniques, the special techniques, the special qualifications of this particular witness. In fact, if anybody set this witness out to be an expert, it certainly wasn't the government. It was the defense through establishing he was an award-winning interrogator that had special techniques. And it really got very difficult, especially in July of 2008, when we started talking about his assisting the war effort in Bogota and Iraq. The judge was absolutely right. There was no way to sit in that courtroom and not immediately think, this guy may be a waterboarder, because that was what was in the news at that point. It was the government would have been hamstrung. We understand the implications of putting anything, the word polygraph, into a trial. That has been, it is not favored evidence. It's certainly allowable in this circumstance and in other circumstances, but we are very cognizant of the prejudice that that can cause. We had no choice there. Well, was there anything in terms of, since you were trial counsel, you know, and I had asked counsel for the appellant here about, so how was the case argued? The case was argued that the confession was false, and on the government's part, we did not argue. We didn't have any polygraph results here, so we did not argue on the basis that the polygraph examiner had given an opinion that this was a truthful confession. What we argued was that the polygraph was an operative fact. He had claimed that there were promises and statements made by the polygraph examiner that the polygraph examiner said, I just didn't say that. I didn't say I was more powerful than the judge or somebody on third floor was more powerful than me, or I could do this or this or this to you. I simply had, he denied the allegation. Did anyone argue there were any, that a polygraph was ever taken? No. Was it, was the contrary put before the jury that a polygraph was not taken? Absolutely, and it was put before the jury through the testimony of the agent a number of times. I can't tell you for sure that that issue came up in closing, but in the transcript, the transcript is replete with the polygraph examiner over and over again saying, but no polygraph was done in this case. No polygraph was done, which brings me to the one issue about the limiting instruction. It wasn't asked for. We're on plain error review. But that limiting instruction certainly has more meaning in a case where actually a polygraph was done, results are put in like he failed the polygraph, and then the district court feels inclined to tell the jury you can't consider it for purposes of that result, but only for purposes of considering the circumstances of the confession. We didn't even have that issue here. I'd like to ask a question that doesn't relate directly to the polygraph, but the interrogator here told him, apparently told him, I don't know what the evidence is, apparently told him that, you know, if you mess up, you can walk, you know, and the judge said, well, since he'd gotten these warning ahead of time that whatever you say can be used, it can be used against you, but that was directly contradictory to what the interrogator told him. I don't understand why it's directly contradictory. I mean, one statement is a sort of a potential thing. I mean, you can, we can use all this evidence, but then this interrogator apparently said we won't. So why does that contradict, one thing contradict the other? I don't understand that. There were two. First of all, the interrogator, of course, denied saying that. But it was not only. That's not clear in the briefs. I wanted to ask that question. What's the evidence of that? He denied that. I believe that we have it in the site if we didn't specifically state that. During the suppression hearing and also on cross-examination during trial, he completely denied making any promises. But there were two pieces of evidence that the district court relied on, not only the rights advisement form, but there was also a summary tape-recorded statement that the jury heard and that the district court heard in determining on suppression whether there was any coercion. And on that tape, the defendant himself said, no promises were made to me, no threats were made to me. So that was completely contradictory in his own words because it was on tape. So what is the evidence? Is it the defendant's testimony at trial that he was made promises? Is that the evidence? Yes. And that is another point I'd like to bring up, Judge Cudahy. You had asked Ms. Freeman about, with respect to the second issue, Dr. Offshe's testimony, whether Dr. Offshe had reviewed the suppression hearing transcript. He testified to that at the Daubert hearing, but his expert disclosure specifically said he relied entirely on his interview of the defendant. I thought the judge pointed out that he didn't inspect the suppression hearing. He did, and that's because the judge was reviewing his expert witness disclosure. You got that correct because the judge was reviewing the expert witness disclosure where Dr. Offshe said, I only relied on Mr. Deputy's, my interview of him. But, Judge Callahan, that goes into your question as well because in the suppression hearing, Mr. Deputy did not testify about that statement that I will, if you confess, I won't be charged. That came up during trial in his cross-examination. He was never that specific in the suppression hearing, and that was the point that the judge was making. Did you review the suppression hearing transcript? Because there, he's just talking about lenient treatment. He's not talking about immunity in that hearing, and your expert disclosure didn't say you reviewed that. You reviewed your interview. The government doesn't have that interview, so I have to base it on your expert witness disclosure. We didn't get the interview of the defendant. And, again, in his words, and we've quoted this in the brief, his opinion was, quote, psychological coercion, paren, that is, linking confession to lenient treatment, in paren. That's what he wanted to testify to. That's from his report. So he didn't say anything about immunity. He said he was linking lenient treatment, psychological coercion to the confession, and the district judge did not believe that that was relevant. Unless there are any other questions, we would submit the rest of our issues on the brief. It appears not. Thank you. Thank you to both counsel. The case, as argued, is submitted for decision by the court.
judges: Cudahy, Rawlinson, Callahan